Farrar Lumber Co.
vs.                    Eq. No. 11033.
Ovide J. Myette

### DECISION.

January 29, 1932.

WALSH, J. Heard on bill, answer and proof.

In 1921 one Romeo Bonin hired from complainant a parcel of land in the City of Woonsocket without a formal lease as tenant from month to month. Bonin and succeeding tenants installed on the land three large oil storage tanks about twenty feet long and ten feet in diameter which were buried in the ground; three storage tanks of 3,000 gallon capacity resting on a concrete foundation about 22 feet long and 3 feet wide at the bottom, upon which foundation the tanks rested in cradles formed in the concrete itself; a pump placed upon a heavy concrete foundation; a motor to operate the pump which was bolted through the floor; a network of pipe lines running from the pump to these tanks, some above the surface of the ground, others buried; numerous sheds and flimsily and cheaply constructed one-story structures, placed on posts.

Sometime in 1922, Bonin incorporated the Fairmount Oil Company, which took over the operation of the premises as an oil station. The Fairmount Oil Company went into receivership recently and then, for the first time, the Farrar Lumber Company notified the Receiver that it claimed the ownership of the tanks, both those buried and on piers, the piping and pumping system and the buildings. The Receiver sold all his right, title and interest, if any, in the articles claimed by the Farrar Lumber Company to one Thurlow and the right, title and interest of the Receiver came by bill of sale to the respondent, Ovide J. Myette.

The sole question which determines this issue is whether the articles mentioned have been attached to the realty

and hence were property in which the Receiver had no right, title or interest and consequently could not convey.

A fixture has been defined as anything attached to the realty with a view to enhance the value thereof and for the purpose of being permanently used in connection therewith. The intention of the owner in affixing such chattels may be expressed in words or it may be inferred from the nature of the chattels affixed, the relation and situation of the parties interested, the policy of the law in respect thereto, the mode of annexation and the purpose or use for which it is made.

*Canning* vs. *Owen*, 22 R. I. 624;
*McCrillis* vs. *Cole*, 25 R. I. 156.

As between landlord and tenant, a tenant may remove whatever he has added to the realty when he can do so without injury to the freehold unless it has become by its manner of addition an integral part of the original premises.

*Canning* vs. *Owen*, *supra*.

Our first problem, then, is to determine whether these chattels were annexed to complainant's realty with the intention of permanent use in connection therewith. There was no written lease of the premises. The tenancy was from month to month. It is hardly conceivable that the ordinary business man would annex chattels of this kind to land where he had such a short tenancy with the intention of leaving them behind when he quit the premises. It is significant that the landlord made no claim to these chattels when he had talks with the tenant about the lease and sale of the premises and that the landlord's claim to them was not made until just before the Receiver's sale. Taking all the facts and circumstances in consideration, the more probable view is that both landlord and tenant acquiesced in the proposition that these chattels were the tenant's up to the time of receivership. Hence, these articles were not annexed to complainant's realty with the intention of permanent use in connection therewith.

The complainant contends that the chattels attached became an integral part of the realty and are not capable of removal without substantial injury to the freehold, hence he is entitled to relief from this Court.

When the tenant took these premises, it was a vacant piece of land with no buildings of any kind upon it. If the tenant is allowed to remove what has been placed upon the land and does not leave the land in the condition in which he took it, there will be one large excavation and two smaller ones thereon. These may be filled easily without any resulting damage to the freehold.

We conclude, therefore, that the buildings, tanks, piping, pump, motor, etc., constituted a unit of equipment which was in the nature of a trade fixture used by the tenant in the conduct of the oil business; that such a construction was acquiesced in by both landlord and tenant for years during the occupancy of the land by the tenant; that there never was any intention on the tenant's part to make them as additions to the freehold; that the chattels can be removed without substantial injury to the freehold.

In view of the offer of the respondent, made in his brief, to pay the costs of putting the land in its former condition, we think it only fair that, before he removes the buildings, etc., he should make arrangements with a reputable contractor to grade these premises or in the alternative pay to complainant the sum of $625, the estimate of complainant's expert for the doing of said work.

The bill of complaint is denied and dismissed.

For complainant: Walling & Walling.

For respondent: Guillaume Myette.